O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GUADALUPE GUEVARA,                    )    NO. EDCV 11-01257-MAN
                                      )
                Plaintiff,            )
                                      )    MEMORANDUM OPINION
        v.                            )
                                      )    AND ORDER
CAROLYN W. COLVIN,[1]                 )
Commissioner of Social Security,      )
                                      )
                Defendant.            )
_____)

        Plaintiff filed a Complaint on August 12, 2011, seeking review of
the denial by the Social Security Commissioner ("Commissioner") of
plaintiff's application for a period of disability, disability insurance
benefits ("DIB"), and supplemental security income ("SSI").  On
September 26, 2011, the parties consented to proceed before the
undersigned United States Magistrate Judge pursuant to 28 U.S.C.
§ 636(c).  The parties filed a Joint Stipulation on April 25, 2012, in
which:  plaintiff seeks an order reversing the Commissioner's decision
and awarding benefits or, in the alternative, remanding the matter for

_____

[1]    Carolyn W. Colvin became the Acting Commissioner of the Social
Security Administration on February 14, 2013, and is substituted in
place of former Commissioner Michael J. Astrue as the defendant in this
action.  (*See* Fed. R. Civ. P. 25(d).)

further administrative proceedings; and defendant seeks an order affirming the Commissioner's decision or, in the alternative, remanding the matter for further administrative proceedings.  The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On April 30, 2004, plaintiff filed an application for a period of disability, DIB, and SSI.  (Administrative Record ("A.R.") 74-76, 78-81.)[2]  Plaintiff alleges an inability to work since March 26, 2004,[3] due to fibromyalgia and depression.  (A.R. 58, 78, 101.)  Plaintiff has past relevant work experience as an office clerk and housekeeper.  (A.R. 24, 111.)

After the Commissioner denied plaintiff's claim initially and upon reconsideration (A.R. 35-39, 44-49), plaintiff requested a hearing (A.R. 50).  On April 19, 2006, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Gene Duncan ("ALJ Duncan").  (A.R. 299-329.)  Medical expert Samuel Landau, M.D. and vocational expert Sandra Fioretti also testified.  (*Id.*)  On June 16, 2006, ALJ Duncan denied plaintiff's claim, and the Appeals Council subsequently denied plaintiff's request for review.  (A.R. 19-

---

[2]   In his decision, the ALJ noted that plaintiff "filed a prior application for disability benefits in November 2002.  The application was denied initially, upon reconsideration, and by an Administrative Law Judge in a decision dated March 25, 2004."  (A.R. 346.)

[3]   The ALJ notes that the alleged date of plaintiff's disability onset is May 15, 2001.  (A.R. 346.)  However, the record indicates that on May 3, 2005, plaintiff amended her onset date to March 26, 2004.  (A.R. 58-59.)

25, 8-10.)


On September 4, 2007, plaintiff sought review in this Court.  In a March 11, 2009 Order ("Remand Order"), the case was remanded for further proceedings.[4]  (A.R. 377-95.)


On April 20, 2009, the Appeals Council effectuated the Court's Remand Order and remanded the matter to the ALJ for further actions consistent with the Remand Order.  (A.R. 375-76.)  The Appeals Council also directed that the subsequent, duplicative applications for a period of disability, DIB, and SSI, filed by plaintiff on September 6, 2007, be consolidated with the remanded case.  (A.R. 375)


On November 16, 2009, a remand hearing was held before Administrative Law Judge Keith Varni (the "ALJ").  (A.R. 618-43.) Plaintiff, who was represented by an attorney, appeared and testified. (*Id.*)  Troy Scott, a vocational expert, also testified.  (*Id.*)  On January 8, 2010, the ALJ issued an unfavorable decision.  (A.R. 346-56.) On June 16, 2011, the Appeals Council declined to assume jurisdiction, making the ALJ's decision the "final decision" of the Commissioner. (A.R. 330-32.)


---

[4]   In its Remand Order, this Court noted that it was unable to ascertain whether ALJ Duncan, in rendering his decision, properly considered the prior ALJ's findings relative to plaintiff's then-alleged impairments, because the record before it did not contain the prior ALJ's finding and decision.  Absent the means to review ALJ Duncan's determination that there had been no changed circumstances in plaintiff's health, this Court held that the continuing non-disability presumption under Chavez v. Bowen, 844 F.2d 691 (9th Cir. 1988), could not be applied.

### SUMMARY OF ADMINISTRATIVE DECISION

In his January 8, 2010 decision, the ALJ incorporated by reference the evaluation of evidence contained in ALJ Duncan's June 2006 decision. (A.R. 346.)  The ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2007, and has not engaged in substantial gainful activity since the alleged onset date.  (A.R. 348.)  The ALJ further found that plaintiff suffers from the "severe" impairments of fibromyalgia and a mood disorder.  (A.R. 349.)  He concluded, however, that such impairments did not meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the Listing of Impairments (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).  (*Id.*)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c).   (A.R. 350.) Specifically, the ALJ found that plaintiff:

> can lift and/or carry 50 pounds occasionally and 25 pounds frequently.  Out of an 8-hour period, she can stand and/or walk for 6 hours and sit for 6 hours.  Pushing/pulling with the upper and lower extremities could be done frequently. Climbing, stooping, crouching, bending and overhead work could all be done frequently.  There would be no manipulative restrictions.  Mentally, [plaintiff] can perform routine and repetitive, entry level, minimally stressful work requiring no contact with the general public and only superficial

4

1     interpersonal contact with co-workers and supervisors.

2

3     (*Id.*)

4

5         The ALJ concluded that plaintiff is unable to perform her past

6     relevant work as a housekeeper, but having considered plaintiff's age,

7     education, work experience, and RFC, and in reliance on testimony from

8     a vocational expert, the ALJ found that jobs exist in significant

9     numbers in the national economy that plaintiff can perform, such as a

10    hand packer, machine packager, and dry cleaning worker.  (A.R. 354-55.)

11    Accordingly, the ALJ concluded that plaintiff has not been under a

12    disability, as defined in the Social Security Act, since May 15, 2001,

13    through the date of the ALJ's decision.  (A.R. 355.)

14

15                              **STANDARD OF REVIEW**

16

17        Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's

18    decision to determine whether it is free from legal error and supported

19    by substantial evidence in the record as a whole.  Orn v. Astrue, 495

20    F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant

21    evidence as a reasonable mind might accept as adequate to support a

22    conclusion.'"  *Id.* (citation omitted).  The "evidence must be more than

23    a mere scintilla but not necessarily a preponderance."  Connett v.

24    Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).  While inferences from the

25    record can constitute substantial evidence, only those "'reasonably

26    drawn from the record'" will suffice.  Widmark v. Barnhart, 454 F.3d

27    1063, 1066 (9th Cir. 2006)(citation omitted).

28

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; *see also* Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(quoting Stout v. Comm'r, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); *see also* Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff claims that the ALJ improperly evaluated her physical impairments, mental impairments, and credibility. (Joint Stipulation ("Joint Stip.") at 5-11, 20-26, 30-37, 42-44.)

6

I.   **The ALJ Failed To Evaluate Plaintiff's Physical Impairments Properly.**

   A.   **Legal Standard**

   Plaintiff was treated for and assessed by multiple physicians with respect to her fibromyalgia and depression.  In assessing the opinions of those physicians, both the elusive nature of a fibromyalgia diagnosis and the weight accorded to the various physicians' opinions must be considered carefully.

      1.   **Fibromyalgia**

   Fibromyalgia is a diagnosis of last resort.  Fibromyalgia is not well-understood, its symptoms are subjective, and it is difficult to diagnose.  *See* Jordan v. Northrop Grumman Corp. Welfare Plan, 370 F.3d 869, 872 (9th Cir. 2004)(noting that "fibromyalgia's cause or causes are unknown, there is no cure, and of greatest importance to disability law, its symptoms are entirely subjective")(*overruled on other grounds in* Abatie v. Alta Health & Life Ins., 458 F.3d 955, 970 (2006). There generally is very little, if any, objective, clinical, or diagnostic evidence upon which the fibromyalgia diagnosis is based.  *See* Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996)("Fibromyalgia . . . [is an] elusive and mysterious disease").  Because of its nature, "there are no laboratory tests for the presence and severity of fibromyalgia." *Id.* "'[T]he only symptom that discriminates between [fibromyalgia] and other diseases of a rheumatic character' [are] multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that

7

the patient has to have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch." Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001) (quoting Sarchet, 78 F.3d at 306).

"Rheumatology is the relevant specialty for fibromyalgia." Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004); *see* Jordan, 370 F.3d at 872-73. "Specialized knowledge may be particularly important with respect to a disease such as fibromyalgia that is poorly understood within much of the medical community." Benecke, 379 F.3d at 594 n.4.

## 2. Medical Opinions And Duty To Develop The Record

An ALJ is obligated to take into account all medical opinions of record. 20 C.F.R. §§ 404.1527(d), 416.927(d). It is the responsibility of the ALJ to resolve conflicts in medical testimony and analyze evidence. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); *see also* 20 C.F.R. §§ 404.1527(d), 416.927(d).

The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to know and observe the claimant. Magallanes, 881 F.2d at 751. When a treating or examining physician's opinion is not

8

contradicted by another physician, it may be rejected only for "clear and convincing" reasons. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). When contradicted by another doctor, a treating or examining physician's opinion may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. <u>Id.</u>; <i>see also</i> <u>Ryan v. Comm'r of Soc. Sec.</u>, 528 F.3d 1194, 1198 (9th Cir. 2008); <u>Orn</u>, 495 F.3d at 632.

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . a treating physician." <u>Lester</u>, 81 F.3d at 831; <i>see</i> <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 n.4 (9th Cir. 1990)(finding that the nonexamining physician's opinion "with nothing more" did not constitute substantial evidence). However, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence." <u>Andrews</u>, 53 F.3d at 1041. Independent clinical findings include "(1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not herself considered." <u>Orn</u>, 495 F.3d at 632 (internal citations omitted).

An ALJ "has a special duty to fully and fairly develop the record and to assure that claimant's interests are considered." <u>Brown v. Heckler</u>, 713 F.2d 441, 443 (9th Cir. 1983). Pursuant to 20 C.F.R. §§ 404.1512(e) and 416.912(e), the Administration "will seek additional

evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, [or] the report does not contain all the necessary information . . . ."  *See* Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (noting that "[i]f the ALJ thought he needed to know the basis of [the doctor's] opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry").

### B.   Summary Of Medical Evidence Of Record

Joseph Nevarez, M.D. treated plaintiff from August 2003, through June 2005.  (*See* A.R. 196-248.)  His treatment records note that plaintiff had numbness (A.R. 197-98, 207, 224) as well as multiple body pains, weakness, and fatigue (A.R. 216, 229, 234, 237).  In a March 4, 2004 letter, Dr. Nevarez opined "that [plaintiff's] current diagnosis include[d] fibromyalgia, depression, with anxiety, and urinary frequency, consistent with interstitial cystitis."  (A.R. 219, 225.)  Dr. Nevarez determined that plaintiff was "incapable of working," had made "poor progress," and had a "poor" prognosis, and that her "conditions [we]re likely permanent." (*Id.*)

At the referral of Dr. Nevarez, Dr. Chandrakant V. Mehta, a rheumatologist, treated plaintiff from October 2003, through May 2006, and diagnosed her with fibromyalgia with neuropathic pain.  (A.R. 156, 251-56.)  Dr. Mehta completed a Fibromyalgia Impairment Questionnaire in which he opined that plaintiff had *all* 18 fibromyalgia trigger points and recounted plaintiff's symptoms of "pain, fatigue, irritability, depression, burning, muscle spasms, and tightness." (A.R. 251-52.)  Dr.

Mehta determined that plaintiff could, *inter alia*, lift/carry up to 5 pounds frequently, lift 5-10 pounds occasionally, carry 5-10 pounds frequently, lift/carry 10-20 pounds occasionally, sit up to 2 hours, stand/walk up to 0-1 hour, get up and move around every 2 hours, and no pushing/pulling.[5]  (A.R. 254-55.)

On September 13, 2004, Babak Zamiri, M.D., a consultative rheumatologist, diagnosed plaintiff with "fibromyalgia with active pressure point tenderness" and "depression and anxiety."  (A.R. 169.) Although Dr. Zamiri opined that plaintiff could engage in light exertional work,[6] he noted that her "chronic myalgia and fatigue" could limit her ability to do certain kinds of work.  (*Id.*)

---

[5]    Dr. Mehta's assessment is consistent with less than a full range of sedentary work.  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §§ 404.1567(a), 416.967(a).  The Social Security Rulings further explain that "[s]ince being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday."  Social Security Ruling 83-10, 1983 SSR LEXIS 30.

[6]    Specifically, Dr. Zamiri opined that plaintiff could stand/walk for six hours in an eight-hour and had no restriction in the number of hours she could sit.  (A.R. 169.)  Dr. Zamiri noted, however, that plaintiff could benefit from normal breaks due to her fibromyalgia.  (*Id.*)  In addition, Dr. Zamiri opined that plaintiff was limited to lifting/carrying up to ten to twenty pounds frequently or occasionally "due to her chronic fatigue and musculoskeletal pain."  (*Id.*)  While Dr. Zamiri did not find that plaintiff had any postural limitations, he did note that plaintiff could have pain and limitation on certain days "[b]ased on the chronicity of her disease."  (*Id.*)  Lastly, Dr. Zamiri opined that the "chronicity of [plaintiff's] fibromyalgia would sometime[s] limit [plaintiff] from participating in a job that requires extraneous workloads."  (*Id.*)

On September 29, 2004, after reviewing the findings and opinions of Drs. Nevarez and Zamiri, a State agency physician opined that plaintiff could perform light work.  (A.R. 186-93.)

On April 19, 2006, Dr. Landau, a cardiologist and a non-examining medical expert, testified at plaintiff's administrative hearing.  (A.R. 317-24.)  Dr. Landau opined that plaintiff "has [a] psychiatric disease with chronic pain, and she has a diagnosis of fibromyalgia."  (A.R. 318.)  He further opined that her "primary problem would seem to be psychiatric" and that he could not confirm the diagnosis of fibromyalgia.  (A.R. 318-19.)  He testified that he could not confirm the diagnosis, because there was only one examination in the record which was by Dr. Zamiri, who reported "18 of 18 tender or trigger points, but there's no control exam."  (A.R. 319.)  Dr. Landau explained that plaintiff testified that everything hurts, thus "[i]f everything hurts then 18 of 18 trigger points will hurt, and that doesn't establish anything."  (A.R. 321.)  He then opined that, even assuming a fibromyalgia diagnosis, plaintiff could perform light work.  (*Id.*)

On August 28, 2006, after examining plaintiff, Dr. Kelly Portnoff, a consultative rheumatologist, assessed plaintiff with fibromyalgia and major depression.  (A.R. 267.)  She reported in a "Multiple Impairment Questionnaire" that plaintiff could, *inter alia*:  lift/carry 5-10 pounds frequently, 10-20 pounds occasionally, and never lift/carry anything over 20 pounds; sit for three hours at a time; and stand/walk for three hours at a time.  (A.R. 271-72.)  Additionally, Dr. Portnoff reported that plaintiff had no "significant limitations" in repetitive reaching, handling, fingering, or lifting and no limitations in:  grasping,

12

turning, and twisting objects; using her fingers/hands for fine manipulations; and using her arms for reaching, including overhead.[7] (A.R. 271-73.)   Dr. Portnoff noted that "[a]s indicated in the exertional impairment questionnaire that I filled out, I feel that the patient is not physically disabled," but "because of her severely depressed mood, I think it would be difficult for her to perform in a competitive work environment."  (A.R. 268.)

On January 16, 2008, consultative examiner Hung Q. Nguyen, M.D. completed an internal medical evaluation of plaintiff.  (A.R. 403-09.) He noted that "[f]ibromyalgia was likely a diagnosis" and opined that plaintiff could perform medium work.  (A.R. 408.)   Specifically, he found that plaintiff could lift/carry 50 pounds occasionally, 25 pounds frequently, stand/walk for six hours, sit for six hours and no pushing/pulling, manipulative, environmental, visual and communicative limitations.  (A.R. 408-09.)

On January 29, 2008, a State agency physician opined that plaintiff could perform light work.  (A.R. 412-18.)

C. **The ALJ Failed To Give Specific And Legitimate Reasons For Rejecting Plaintiff's Treating Physicians' Opinions Regarding Her Physical Impairments.**

In his decision, the ALJ rejected the opinions of Drs. Nevarez and

---

[7]   Dr. Portnoff's physical assessment appears to be consistent with less than a full range of sedentary work.  *See supra* note 5.

13

Mehta in favor of the opinion of Dr. Nguyen, because their opinions: (1) lacked adequate support; and (2) were inconsistent with other medical evidence in the record. (A.R. 350-51.) Neither one of these grounds constitutes a specific and legitimate reason for rejecting Drs. Nevarez's and Mehta's opinions.

### 1.  **Dr. Nevarez**

The ALJ reviewed Dr. Nevarez's opinion but determined that his opinion was "not worthy of significant probative weight or controlling weight," because it lacked adequate support in the record. (A.R. 350.) Specifically, the ALJ noted that Dr. Nevarez's opinion was not "well supported," because: "examination of [plaintiff's] joints revealed no decreased range of motion, swelling, warmth, redness or tenderness and no neurological deficits"; "[x]-rays of the bilateral knees and cervical spine were negative"; "an MRI of the brain was normal"; and "treating notes reflect[ed] muscle spasm but no disabling symptoms." (A.R. 350-51.)  However, as noted *supra*, the symptoms of fibromyalgia are subjective in nature and require a finding of multiple tender spots.  Not only did Dr. Nevarez find that plaintiff had multiple body pains, weakness, and fatigue, but he also relied on the fibromyalgia diagnosis by Dr. Mehta -- a rheumatologist and, thus, the appropriate specialist for fibromyalgia -- in opining that plaintiff had fibromyalgia.

As plaintiff's treating physician, Dr. Nevarez was best-situated to determine the severity of plaintiff's fibromyalgia and resulting limitations.  Accordingly, in view of the nature of fibromyalgia and its

14

1  diagnosis, the minimal objective findings cannot constitute a specific

2  and legitimate reasons for rejecting Dr. Nevarez's opinion.

3

4      The ALJ's also declined to afford Dr. Nevarez's opinion

5  "significant probative" or "controlling" weight, because it was

6  "inconsistent with other significant medical evidence and opinions."

7  (A.R. 351.) Specifically, the ALJ noted that Dr. Nevarez's opinion was

8  inconsistent with the opinion(s) of: "Dr. Landau who testified . . .

9  that [plaintiff] could perform a narrowed range of light work"; Dr.

10 Zamiri, Dr. Nguyen, and the State agency review physicians "who all

11 concluded that [plaintiff] could perform light . . . or medium work";

12 and "Dr. Portnoff who concluded that [plaintiff] was not physically

13 disabled" but could not work because of her severely depressed mood.

14 (*Id.*; citations omitted.) As noted *supra*, in his March 4, 2004 letter,

15 Dr. Nevarez opined that plaintiff was incapable of work due to her

16 fibromyalgia, depression, anxiety, and urinary frequency. However,

17 because Dr. Nevarez did not render an opinion regarding plaintiff's

18 exertional or non-exertional limitations as a result of her

19 fibromyalgia, his opinion is not contradicted by the opinions of the

20 other physicians on this issue.[8] As such, the ALJ's second ground does

21 not constitute a specific and legitimate reason for rejecting Dr.

22 Nevarez's opinion.

23 ///

24 ///

25 ───────────────

26 [8]    Moreover, given Dr. Nevarez's diagnosis and the length of his
   treating relationship with plaintiff, the ALJ should have asked Dr.
   Nevarez to render an opinion regarding plaintiff's limitations. It is
27 incumbent on the ALJ to develop the record fully and fairly. *See, e.g.*,
   Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003); Tonapetyan v.
28 Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

2.   **Dr. Mehta**

The ALJ also determined that the opinion of Dr. Mehta was "not worthy of significant probative weight or controlling weight," because it lacked adequate support in the record.  (A.R. 351.)  Specifically, the ALJ found Dr. Mehta's opinion to be not "well supported," because: (1) his "treating notes do not reflect disabling symptoms but do reveal normal gait and no muscle weakness"; and (2) "physical examinations performed by other physicians do [not] reflect disabling symptoms." (*Id.*)

In support of his first ground, the ALJ noted, for example, that "on physical examinations there have been tender points and muscle spasm but normal gait and no decreased range of motion, swelling, warmth, redness, or tenderness and no neurological deficits." (*Id.*; citations omitted.)  As with Dr. Nevarez, the ALJ discredits Dr. Mehta's opinion, because it is not supported by objective findings.  However, as noted *supra*, the symptoms of fibromyalgia are subjective in nature.  As relevant here, Dr. Mehta found that plaintiff had "symptoms of pain, fatigue, irritability, depression, burning, muscle spasm and tightness" as well as "18 trigger points," which is *the* principal diagnostic test for fibromyalgia.  Thus, in view of the nature of fibromyalgia, the minimal objective findings cannot constitute a specific and legitimate reason for discrediting Dr. Mehta's opinion.

The ALJ also discredited the opinion of Dr. Mehta, because it was "inconsistent with other substantial evidence in the record."  (A.R. 351.)  The ALJ found that Dr. Mehta's opinion, like Dr. Nevarez's, was

16

inconsistent with the opinions of Dr. Landau, Dr. Zamiri, Dr. Nguyen, and the State agency review physicians.  (*Id.*)  However, the ALJ's reasoning is not legitimate, because all the other physician's opinions were inconsistent themselves on this issue.  Specifically, Dr. Zamiri, Dr. Landau, and the State agency physicians found limitations consistent with light work; Dr. Portnoff found limitations consistent with less than a full range of sedentary work; and Dr. Nguyen found limitations consistent with medium work.  Further, while the ALJ cites the opinions of these other physicians to support his argument, he later rejects all but Dr. Nguyen's opinion -- *to wit*, the least restrictive opinion -- in determining plaintiff's RFC.  (A.R. 352-53.)  As such, the ALJ's reasoning does not constitute a specific and legitimate reason for rejecting Dr. Mehta's opinion.

### 3.  <u>Dr. Nguyen</u>

Even assuming, arguendo, that the ALJ committed no error in assessing the opinions of Drs. Nevarez and Mehta, the ALJ's decision to afford Dr. Nguyen's opinion the "greatest weight" is not supported by substantial evidence.  The ALJ affords "great weight" to Dr. Nguyen's opinion, because:  (1) Dr. Nguyen is a "Diplomate [of the] American Board of Internal Medicine"; (2) Dr. Nguyen "performed the most recent comprehensive physical examination of plaintiff"; and (3) Dr. Nguyen's "opinion is supported by his own findings as well [as] the objective findings as a whole which have shown tender points and muscle spasm but no decreased range of motion, weakness, warmth, redness or tenderness, normal gait and no neurological deficits."  (A.R. 352-53.)

17

1      As an initial matter, and contrary to the ALJ's decision, Dr.
2  Nguyen's opinion is not entitled to any "greater weight" because he is
3  a Diplomate of the American Board of Internal Medicine.  As noted *supra*,
4  the relevant specialty for fibromyalgia is rheumatology.  Accordingly,
5  Dr. Nguyen's opinion was not entitled to more weight than the opinions
6  of plaintiff's treating specialists, particularly rheumatologists Drs.
7  Zamiri, Mehta, and Portnoff, all of whom assessed plaintiff with a more
8  restrictive RFC than did Dr. Nguyen.

9

10     Further, while Dr. Nguyen did perform the most recent comprehensive
11  physical evaluation of plaintiff, Dr. Nguyen noted on that evaluation
12  that there were "[n]o record[s] available for review" at the time of his
13  consultative examination of plaintiff.  (A.R. 403.)  Thus, he based his
14  assessment of plaintiff on an incomplete, snapshot picture of
15  plaintiff's condition.  *See* 20 C.F.R. §§ 404.1517, 416.917 ("If we
16  arrange for [a consultative] examination or test, . . . [w]e will also
17  give the examiner any necessary background information about your
18  condition.")  Without the benefit of reviewing the medical records, and
19  in view of the nature of fibromyalgia, the Court cannot conclude that
20  Dr. Nguyen's opinion constitutes substantial evidence, let alone merits
21  the "great weight" the ALJ afforded it.  *See, e.g.,* Chavez v. Astrue,
22  2012 U.S. Dist. LEXIS 51043, at *10 (C.D. Cal. April 11, 2012)(finding
23  that the examining psychiatrist's opinion did not constitute substantial
24  evidence justifying rejection of the opinion of plaintiff's treating
25  physician, because the examining psychiatrist was not provided complete
26  access to plaintiff's medical records); Jackson v. Astrue, 2012 U.S.
27  Dist. LEXIS 23989, at * 11 (E.D. Cal. Feb. 24, 2012)(finding that "[t]he
28  ALJ erred in rejecting the opinion of plaintiff's treating physician in

favor of an examining physician's opinion who did not review the entirety of plaintiff's medical records").

* * * * *

Accordingly, for the aforementioned reasons, the ALJ failed to consider properly the opinions of plaintiff's treating physicians.  On remand, the ALJ must provide reasons, if they exist and in accordance with the requisite legal standards, for discrediting their opinions.

**II.  <u>On Remand, The ALJ Should Revisit His Consideration Of Plaintiff's Mental Impairments</u>**.

Plaintiff claims that the ALJ failed to give specific and legitimate reasons for rejecting the opinion of treating psychiatrist Marc Blumberg, M.D.

The ALJ did "not give controlling weight or even great weight to Dr. Blumberg's opinion." (A.R. 353.)  Specifically, the ALJ rejected Dr. Blumberg's opinion, because:  (1) it was not well supported; (2) plaintiff received benefit from her medications and minimal treatment; and (3) it was inconsistent with other substantial evidence in the record.  (A.R. 353.)

The ALJ's first ground constitutes a specific and legitimate reason for discrediting Dr. Blumberg's opinion.  In a May 11, 2009 assessment, Dr. Blumberg opined that plaintiff was unable to "maintain a sustained level of concentration, sustain repetitive tasks for an extended period,

adapt to new or stressful situations and could not complete a 40-hour workweek without decompensating." (A.R. 353, 522.) However, as properly noted by the ALJ, Dr. Blumberg's May 11, 2009 assessment appears to be "exaggerated" as compared to his treatment/progress notes and, thus, not well supported.

For example, between February and May 2008, although Dr. Blumberg reported that plaintiff was "mildly depressed," her "mental status examination findings were all marked appropriate with normal thought processes and no delusions or hallucinations." (A.R. 353; see A.R. 432, 436 - February 20, 2008; A.R. 421, 424 - March 25, 2008; A.R. 446 - April 8, 2008; A.R. 445 - May 6, 2008.) Indeed, on those days, plaintiff was also found to have normal/appropriate speech and motor activity, good eye contact, responsive interactions, an alert level of consciousness, and good/appropriate concentration. (A.R. 421, 424, 432, 436, 445-46.) Similarly, Dr. Blumberg's progress notes from January 21, 2009, to June 30, 2009, as noted by the ALJ, all generally reflect that, on examination, plaintiff's mood was depressed or mildly depressed with occasional racing thoughts, but her appearance, affect, attention/concentration, and speech were appropriate, and she had no delusions or hallucinations.[9] (A.R. 525 - June 30, 2009 (depression,

---

[9]   Plaintiff cites to several "Therapy/Group Progress" or "General progress" notes completed by a clinician at Riverside County, Department of Mental Health. (See, e.g., A.R. 536, 540-42, 545, 555-57.) However, clinicians are not "acceptable medical sources" or "treating sources," and thus, there is no requirement that the ALJ give specific and legitimate reasons for disregarding their opinions. Social Security Ruling 06-03p, 2006 SSR LEXIS 5 (noting that "only 'acceptable medical sources' can give . . . medical opinions"). Further, an ALJ is not required to "discuss every piece of evidence." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003)(citation and internal quotations omitted).

racing thoughts); A.R. 526 - June 1, 2009 (mild depression); A.R. 528 - April 29, 2009 (mild depression, less racing thoughts); A.R. 529 - April 1, 2009 (mild depression); A.R. 534 - March 6, 2009 (depression, poor insight, fair impulse control, racing thoughts); A.R. 535 - March 4, 2009 (mild depression, racing thoughts).)

Accordingly, because Dr. Blumberg's May 11, 2009 assessment does not appear to be well supported and/or consistent with his mild treatment/progress notes, the ALJ provided a specific and legitimate reason for rejecting Dr. Blumberg's opinion. *See* Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996)(ALJ properly disregarded treating doctor's report where it varied from his treatment notes); Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1986)(treating doctor's conclusory opinion that claimant was disabled was properly rejected by the ALJ when it was internally inconsistent and not consistent with doctor's prior medical reports).

The ALJ's second reason for rejecting Dr. Blumberg's opinion -- *to wit*, that Dr. Blumberg's opinion was inconsistent with "[plaintiff's] testimony of benefit from medications" and "minimal treatment" -- is unpersuasive. (A.R. 353.) In support of this reason, the ALJ noted that plaintiff had "good adherence to medication and no adverse side affects." (*Id.*) Further, the ALJ noted that, while plaintiff "received routine outpatient treatment for depressive disorder," she did not have any "acute mental health crisis requiring inpatient hospitalization or intensive treatment." (*Id.*)

While plaintiff did admit to some benefit from her medications, she

21

testified that her medications helped her only "50 percent." (A.R. 633.) In fact, plaintiff's medical records reflect that her "medication response" was only partial. (*See, e.g.,* A.R. 486 - May 6, 2008 (medication helps 6 out of a scale of 1 to 10); A.R. 546 - January 21, 2009 (partial response); A.R. 526 - June 1, 2009 (partial-limited response); A.R. 525 - June 30, 2009 (partial response).) In addition, contrary to the ALJ's findings, plaintiff did have an adverse side effect from her medications -- *to wit*, drowsiness. (A.R. 353.) Further, there is no substantial evidence in the record to support the ALJ's inference that plaintiff's depression would be alleviated if plaintiff had secured more aggressive treatment, such as impatient hospitalization. Moreover, plaintiff testified that she was unable to secure other treatment, because her insurance did not cover it. (A.R. 308, 313.) Thus, the ALJ's second ground for rejecting Dr. Blumberg's opinion is not legitimate.

The ALJ's third reason for rejecting Dr. Blumberg's opinion -- *to wit*, that it was "inconsistent with other medical opinions" -- is unpersuasive. (A.R. 353.) In support of this reason, the ALJ cited the opinions of the psychiatric consultative examiner and the State agency physicians who "all concluded that [plaintiff] had no limitations from a psychiatric standpoint." (*Id.*)

On September 10, 2004, Dr. Romualdo R. Rodriguez, M.D., a psychiatrist, completed a psychiatric evaluation of plaintiff. (A.R. 160-65.) He diagnosed plaintiff with "attention deficit hyperactivity disorder" ("ADHD") and "dysthymia." (A.R. 164.) He noted that plaintiff's mood was irritable and depressed, but she had good eye

22

contact, her thought processes were coherent and organized, her thought content was relevant and non-delusional, her speech was normal, she was alert and oriented, and she was able to follow the conversation well. (A.R. 163-64.)  He assessed her with a GAF score of 70 and determined that she had "no functional limitations from a psychiatric standpoint." (A.R. 164-65.)

On September 29, 2004, a State agency physician diagnosed plaintiff with non-severe ADHD and "affective disorders." (A.R. 171-84.)  The State agency physican found mild limitation in plaintiff's ability to: perform activities of daily living; maintain social functioning; and maintain concentration, persistence, or pace.  (A.R. 181.)

On July 14, 2008, after reviewing additional/updated medical records from Riverside County Mental Health -- records dated as recently as May 2008 -- State agency physician R. Paxton, M.D. determined that plaintiff did not have a severe mental impairment.  (A.R. 450-62.)

The above-cited opinions are not necessarily inconsistent with Dr. Blumberg's opinion.  As an initial matter, the opinions of Dr. Rodriguez and the initial State agency physician were rendered many years prior to Dr. Blumberg's treatment and assessment of plaintiff.  It is indeed possible, as plaintiff properly notes, that plaintiff's mental impairment worsened over the years.  Further, while the other State agency physician's opinion is more recent, he was only able to consider a small portion of Dr. Blumberg's treatment/progress notes before rendering his opinion.  Thus, his opinion, like the opinions of Dr. Rodriguez and the other State agency physician, is not based on a

complete review of plaintiff's medical records.   Therefore, in this instance, the alleged "inconsistencies" between the opinions of Dr. Blumberg and the other physicians do not appear to constitute a specific and legitimate reason for rejecting Dr. Blumberg's opinion.

Moreover, it is unclear whether the ALJ's decision is supported by substantial evidence, because two of the three opinions pre-date Dr. Blumberg's opinion by several years, and none of them are based on a complete review of the medical record.   Accordingly, as this case is being remanded, the ALJ should provide Dr. Rodriguez or a consultative examiner with plaintiff's records so that he/she can render an opinion based upon a *complete* review of the medical record, including Dr. Blumberg's treatment/progress notes.   In addition, and in view of the length of the treating relationship between Dr. Blumberg and plaintiff, the ALJ should develop the record further to resolve any conflict or ambiguity with respect to the opinions contained in Dr. Blumberg's treating notes and his May 11, 2009 narrative report.

**III.  The ALJ Failed To Provide The Requisite Clear And Convincing Reasons For Rejecting Plaintiff's Subjective Pain Testimony.**

Once a disability claimant produces objective medical evidence of an underlying impairment that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a)

(explaining how pain and other symptoms are evaluated).  "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."  Robbins, 466 F.3d at 883.  The factors to be considered in weighing a claimant's credibility include:  (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c).

     The ALJ found that "[a]fter careful consideration of the evidence . . . [plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . ."  (A.R. 353.)  However, the ALJ rejected plaintiff's testimony regarding the severity of her pain symptoms, because:  (1) plaintiff's current treatment appears minimal and adequate; (2) plaintiff's asserted limitations are not supported by any credible evidence of record; (3) plaintiff has a poor work history; and (4) plaintiff has a valid California's driving license but has denied driving since 2004.  (A.R. 354.)

     The ALJ's first ground -- to wit, that plaintiff's treatment is "minimal" and "adequate" -- is not a convincing basis upon which to reject plaintiff's testimony.  In support of this ground, the ALJ noted

that plaintiff is seen for her "physical complaints at three month intervals." (A.R. 354.) However, plaintiff's regular treatment does not demonstrate that her treatment is "minimal" and/or "adequate." To the contrary, plaintiff testified that her doctor recommended additional treatment, but her insurance would not cover it. (A.R. 307-308.) As a result, plaintiff only received additional treatment when she "ha[d] cash." (A.R. 307.) While an unexplained failure to seek treatment may cast doubt on a claimant's credibility, such an inference is unreasonable when plaintiff is indigent. *See* Fair v. Brown, 885 F.2d 597, 602 (9th Cir. 1989). Indeed, the Ninth Circuit has "proscribed the rejection of a claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it." Regennitter v. Comm'r of Soc. Sec., 166 F.3d 1294, 1297 (9th Cir. 1999). As such, this reason for rejecting plaintiff's subjective complaints is not convincing.

In further support of his first ground, the ALJ noted plaintiff's admission of "significant benefit from [her] current medication." (A.R. 354.) However, while plaintiff did admit to some benefit from her medication, her medical records and testimony indicate that her "medication response" was only partial. (*See, e.g.,* A.R. 486, 525-26, 535, 546; *see also* A.R. 633 - medications were only helping her "50 percent.") The ALJ also noted that plaintiff "complained of adverse side effects [and that] her dosage was adjusted." (A.R. 354.) However, it is unclear how an adjustment in plaintiff's medication would demonstrate that her treatment was "adequate." Accordingly, the ALJ's first ground is not convincing.

26

The ALJ's second ground for discrediting plaintiff also is not convincing.   The ALJ found plaintiff's asserted limitations to be "grossly exaggerated," "incredible," "excessive," and "grossly hyperbolic" in view of the record, which shows "tender points and muscle spasm but normal gait and no decreased range of motion, no swelling, no warmth, no redness or tenderness, no neurological deficits, normal radiological findings and only mild depression." (A.R. 354.)   However, the failure of the objective medical record to corroborate fully plaintiff's subjective symptom testimony is not, by itself, a legally sufficient basis for rejecting such testimony. Rollins, 261 F.3d at 856; see also Bunnell, 947 F.2d at 347 (noting that "[i]f an adjudicator could reject a claim of disability simply because [plaintiff] fails to produce evidence supporting the severity of the pain there would be no reason for an adjudicator to consider anything other than medical findings").   Moreover, the lack of objective medical evidence is consistent with the nature and symptoms of fibromyalgia, an impairment which, as discussed in detail supra, "is diagnosed entirely on the basis of patients' reports of pain and other symptoms." Benecke v. Barnhart, 379 F.3d 587, 584 (9th Cir. 2004).   Therefore, the ALJ's finding that the objective medical evidence of record does not support plaintiff's asserted limitations does not, by itself, constitute a clear and convincing reason for discrediting plaintiff. See Varney v. Sec'y, 846 F.2d 581, 584 (9th Cir. 1988); Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986).

Next, the ALJ discredited plaintiff due to her purportedly poor work history.   Specifically, the ALJ noted that plaintiff has "inconsistent and sporadic" earnings, has "denied looking for work since

2003 when she said she last worked as a housekeeper," and has received welfare.  (A.R. 354.)  While a poor work record may negatively affect a claimant's credibility, the record reflects that plaintiff worked to some degree for most of the years prior to her disability onset date (*see, e.g*, A.R. 83 - between 1989 and 2002 plaintiff earned 46 quarters of coverage out of a maximum of 56 quarters).  Further, although plaintiff stopped working in 2003, she did so because her job was too "stressful, and [she] had a panic attack," and her doctor put her on "rest."  (A.R. 634-35.)  Thus, while plaintiff's work history is not a model of consistency, in this instance, it is not a clear and convincing reason for rejecting plaintiff's credibility

Lastly, the ALJ appears to discredit plaintiff, because she denied driving since 2004, but has a valid California driver's license.  (A.R. 354.)  It is unclear how the fact that plaintiff has a driver's license -- a valid form of identification regardless of whether she drives -- has any bearing on plaintiff's credibility.  As such, it cannot constitute a clear and convincing reason for finding plaintiff to be not credible.

Accordingly, for the aforementioned reasons, the ALJ failed to set forth appropriate reasons for rejecting plaintiff's credibility.  This constitute error.  On remand, the ALJ must provide reasons, if they exist and in accordance with the requisite legal standards, for discrediting plaintiff's pain testimony.

///

///

///

**IV.   Remand Is Required**.

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000).   Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.   *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings").   However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate.   *Id.*

Here, the Court concludes, with some hesitation, that remand is the appropriate remedy to allow the ALJ one final opportunity to remedy the above-mentioned deficiencies and errors.[10]   *See, e.g.*, Benecke, 379 F.3d at 593 (remand for further proceedings is appropriate if enhancement of the record would be useful); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in the record).   It is, however, deeply troubling to the Court that this case has already been remanded for further consideration.

---

[10]   On remand, the ALJ should consider the impact of *all* plaintiff's impairments, whether severe or not, on her ability to engage in and sustain full-time work.   *See* 20 C.F.R. §§ 404.1545(e), 416.945(e)("[W]e will consider the limiting effects of all your impairment(s), even those that are not severe.").

1

**CONCLUSION**

2

3       Accordingly, for the reasons stated above, the Commissioner's

4  decision is REVERSED, and this case is REMANDED for further proceedings

5  consistent with the Memorandum Opinion and Order.

6

7       IT IS FURTHER ORDERED that the Clerk of the Court shall serve

8  copies of this Memorandum Opinion and Order and the Judgment on counsel

9  for plaintiff and for defendant.

10

11      **LET JUDGMENT BE ENTERED ACCORDINGLY.**

12

13  DATED:  March 29, 2013

14                                    _Margaret A. Nagle_
                                     _____
15                                    MARGARET A. NAGLE
                                     UNITED STATES MAGISTRATE JUDGE
16

17

18

19

20

21

22

23

24

25

26

27

28